Appellate number 14-9005. Council, thank you. Good morning, Your Honors. May it please the court. My name is Sam Welch, and I'm here on behalf of the petitioner and the appellant in this case, Paul Gamboa Taylor. With the court's permission, I'd like to reserve four minutes for review. That'd be granted. Your Honors, some time has passed since the original briefing in this appeal, so I'd like to start out by briefly explaining our argument as it stands today. Our argument grows out of the hearing that took place on Mr. Taylor's first post-conviction petition in June of 1997. At that hearing, the only evidentiary hearing that Mr. Taylor has ever received on any of his ineffectiveness claims, his court-appointed lawyer led him to the stand and, rather than advance Mr. Taylor's claims himself, said, you've raised issues of ineffective assistance of counsel. Would you please explain to the court what instances you claim? Mr. Taylor, a man with no schooling in the law, an unusually low verbal IQ score, and, quote, clear deficits in his general fund of information and knowledge, did his best in halting English to explain that he had been incompetent during trial and that his trial lawyer had been ineffective. But no one, not even the most skilled attorney, could have won that particular claim from the witness stand because that claim depended on facts that were not yet in the record. Mr. Welch, in addition to that, we have other things that are in the state court record. From the first two experts that were in the trial proceedings up through the experts in the third proceeding that you'd like to take account of, you are now asking us for slightly different relief, but it's also in the face of some very different case law. And I guess as you're asking us to consider remanding, to consider if he or counsel was at fault, if that could be attributed to him, and what we should make of the state court record, I'm wondering to what end would we be remanding for that to be considered by the district court when we already have on the books Cullen v. Pinholster and Williams v. Superintendent Mahanoy? Because don't those require us to limit ourselves to this closed state court record since this was the issue of competency was already addressed on the merits by the state court? And we've got Williams that says even if it was really defaulted, it wasn't raised anywhere in state court proceedings, that you still can't look to the evidence that comes in for a different purpose to get to the underlying issue of the trial counsel's ineffectiveness. A lot of things in that question. I think all of them have to start by defining what claims we're talking about. The only claim in our 60B that trial counsel was ineffective for failing to investigate trial counsel's incompetence. It's an investigation claim premised on the competency finding. Nothing that is currently in the state court record answers that question. The premise of that question is that there's additional evidence that the state court never considered that decides whether Mr. Taylor was competent or not. An investigation claim, Rompilla, Wiggins, Porter, all of those claims are premised on evidence that was not in the state court record. So in terms of Cullen v. Penholster, this claim was not decided in TCRA 1. Start by defining the claim. It's a failure to investigate claim. Ask, was that claim raised in the first post-conviction proceedings? It was not. The state court is consistent. Mr. Taylor said ineffectiveness for letting me make decisions as to trial strategy and for letting me present witnesses. On appeal, the Supreme Court says, quote, the single issue in this case is whether trial counsel was ineffective for permitting Mr. Taylor to make decisions as to trial strategy. That is not an investigation claim. The commonwealth's briefing in the state court agreed that by the time this claim was raised for the first time in the second piece area petition, it was new. They said their argument was that it should be waived. The district court in 2004 treated this as a new claim from the second piece area petition. What I'm trying to do here is first steer you around Cullen v. Penholster. There was no D1 determination on this claim in the state court because the first place that this claim was raised was the second piece area petition, which the state court found untimely under a rule that this court then found was inadequate. Cullen v. Penholster, D1 review, doesn't apply to the claim. You asked about whether 60B is the appropriate mechanism for our relief. We do not seek to relitigate that claim. The 60B is about the denial of the evidentiary hearing that would have allowed us to prove that claim. And as I alluded to earlier, with investigation claims, the evidentiary hearing is sort of the end all be all. We have new facts that we say prove the state court's competency determination was incorrect. We can't win without those new facts. We were denied an evidentiary hearing. Trace the denial of the evidentiary hearing. So far, again, as I mentioned in my opening, the sole evidentiary hearing that was ever granted was in the first piece area petition on a different claim. In Rule 60B, we're looking at whether the federal district court's proceedings were somehow defective. I'll use the word. The integrity of those proceedings are questionable. So you're saying you can pursue Rule 60B because you were denied an evidentiary hearing by the United States District Court? Am I understanding you correctly? Correct. In footnote 5 of the district court's opinion in 2004, the district court said nothing about our request for an evidentiary hearing. The closest it came was in footnote 5 where it said all of the new evidence is irrelevant. It's the wrong standard. The standard is whether we make a prima facie case based on the evidence that we've proffered that wouldn't be proven on the record if it existed, which is partially why, and if I may, I know we have limited time. And how was that dealt with in our 2007 opinion before our court? I thought that was dealt with. Yes, Judge. In footnote 19, if I may impart to you one thought over the course of this argument, secure yourselves for the meaning of footnote 19 in Taylor v. Hoare. What this court did in footnote 19 was say, Mr. Taylor, you had an evidentiary hearing on this claim or this issue. At that hearing, you failed to develop the factual basis of this claim. The evidentiary hearing that this court said we failed to develop the factual basis at which happened two years before the claim that it pertained to ever occurred. It said you failed to develop the factual basis of this claim in 1997 for a claim that everyone agreed was first raised in 1999. But the evidence was available in 1997. The fact of his mental state at the time of the plea and degree of guilt and sentencing proceedings was all available. Our court already found that. He didn't find diligence in securing it. It found, the court found, that Mr. Taylor was not diligent in developing the factual basis of a claim that would not be raised for another two years. The facts underlying that claim may or may not have been available at the time. Keeney v. Tamayo-Reyes in 1992, and I'm sorry to jump back there, but Shin says that the meaning of at fault and diligence was fixed in 1996 when AEDPA was passed. At the time that AEDPA was passed, Keeney v. Tamayo-Reyes, which Shin cites, was the governing law at the time. And Keeney v. Tamayo-Reyes says clearly the development of the factual basis of the claim and the legal presentation of the claim has to happen at the same time. At the time, they didn't want petitioners to raise legal bases and then later present the claims. They called that sandbagging or the factual basis. Mr. Taylor was the one who got sandbagged in this case because the state courts later decided that the legal presentation of the claims happened in 1999, and yet his lack of diligence for developing the claim happened in 1997. I realize this is all dense. Footnote 19 is incredibly dense, and it is the only place in which this court in 2007 denied our evidentiary hearing on that claim, the claim that trial counsel was ineffective for failing to investigate Mr. Taylor's competence. And it says the problem, again, I'm quoting, quote, is that Taylor already had an evidentiary hearing on this issue before the first PCRA court where he failed to produce Dr. Blair's and Dr. Dudley's evaluations, close quote, footnote 19. And if, in footnote 19, that if he wanted to develop it, it had to be developed in relation to his ineffective assistance claim for the PCRA counsel. Sorry, PCRA counsel? During his first post. Oh, PCRA counsel. So in footnote 19, first read the section that comes immediately before it. It's appended to the end of the section that purports to deny an ineffective, it does deny an ineffective assistance of counsel claim, but it doesn't really address the investigation part. It comes close. In footnote 19, the court says, with regard to Mr. Taylor's allegation that trial counsel was ineffective for failing to investigate, this issue, it says Mr. Taylor requests an evidentiary hearing. Again, and I also think trying to figure out what the word again means, because I think what that's referencing is the denial of the evidentiary hearing on the underlying competence. Even though, I know you've told us this, you've already said those things. I think the challenge, it appears that footnote 19 doesn't help you because it suggests that this court has already decided this claim, therefore there's no procedure at the fault. And as a result, Martinez is not the avenue by which your client can seek relief. Footnote 19 doesn't decide the claim. It decides the evidentiary hearing. But Shin undermines the basis of footnote 19. The topic sentence has to do with Taylor argues his newly acquired evidence of incompetence. He shows trial counsel's investigation was inadequate and is sufficient to establish prejudice because there was a reasonable probability the new evidence would have resulted in a finding that he was incompetent. The next sentence. On this basis, he contends they should have had an evidentiary hearing. In the district court, the district court should have had an evidentiary hearing, but then it continues by saying the problem is you did have an evidentiary hearing in the state court. On the first PCRA claim. On the first PCRA claim? Tell me what the first PCRA claim is compared to the one you're saying, the failure to investigate competency. Ineffective assistance of counsel for permitting me to make decisions as to strategy. It's different than a claim that trial counsel should have investigated before making that decision. Wasn't the claim that ineffective assistance went to issues like the defense of diminished capacity and drug use? Those are things that the state Supreme Court characterized as going to, in effect, the investigation of competency. First, I think at one level, to the degree you're asking how did the state court characterize the issue that was raised below, that's a question of federal law. Whether the claim was exhausted, whether the presentation was sufficient, whether the state procedural rules applied, that's a federal question. But even if you take the state court at its word, read the Supreme Court's opinion in PCRA 1, the Pennsylvania Supreme Court's opinion. It says, quote, the single issue in this appeal is whether trial counsel was ineffective for permitting Mr. Taylor to make decisions as to trial strategy. That is not an investigation claim. If you're, to the degree there's any worry that those claims are similar enough, look at Bay versus superintendent. I'm sorry, but just looking at the Pennsylvania Supreme Court's decision, it talks about woven into the claim of ineffectiveness is the assertion that his mental state after the killing prevented him from making rational decisions, essentially rendering him incompetent. And it then goes on to address this as a question of competence and whether that has been supported by the record that was developed. So two things. Again, woven into, pretty unfair, but it's a state court determination. This federal court is not bound by that. The question is whether that claim was adequately raised. That's a question of federal law. Even if he take them at their word, even if Mr. Taylor, in his halting English from the stand, pro se in 1997, adequately articulated a competency claim. The resolution of a competency claim has no bearing on the resolution of a failure to investigate competency claim. The prejudice inquiry for that latter claim depends on evidence that is by definition not in the record because trial counsel failed to investigate it. Yeah, but your problem is Shin and E2 because we do have a statement by another panel in a presidential opinion saying no diligence. So I think that even if you accept everything you just said, you're not getting what you want, which is an evidentiary enlargement because of Shin. Let me address Shin. I agree Shin certainly changed, and I see my time. You can answer the panel's questions if you don't mind. Between Michael Williams in 2000 and Shin in 2022, the Supreme Court said very little about E2. E2 and procedural default share a common source. They come from Wayne Wright v. Sykes. Constantly, courts and parties are borrowing between the two. That's exactly what everyone was trying to do with Martinez. Said Martinez excuses a procedural default for ineffective assistance of counsel. Aha, I bet it applies to E2. I want to give footnote 19 the best reading that I can. We raised in our petition for rehearing, we said you can't fail to be diligent at a hearing that occurred two years before the second hearing, and the court denied it. My best reading of that footnote is that at the time, it was reasonable to borrow from doctrines of procedural default and hold something like footnote 19. You essentially failed to advance the claim as you would in a procedural default to E2. Shin says you cannot do that. Shin says E2 means what it meant in 1996 at the text. And in 1996, the governing law was Kennedy v. Tomei-Reyes, and Kennedy v. Tomei-Reyes was clear. Factual development and legal presentation has to happen at the same time. We raised this argument in our petition for rehearing. It was denied. I assume the panel believes something about that argument was wrong. I think that ship has sailed. Now we've got to deal with Shin, and we've got to deal with E2, and we've got to deal with the law that exists. I agree. Read the final section of section 2C2 in Shin. It's short, but it says E2 means what it meant in 1996 when we passed EDPA. And at that point, well, and Shin says to the degree everybody else has been trying to borrow doctrines of procedural default, don't do that anymore. Read the text. And I believe that in that regard, Shin significantly undermines the logic of footnotes. My time is up. I think I don't know if Judge Krause has a question. I have a couple of questions. I mentioned before, and I don't know if you got to give your full answer on our decision in Williams, because the arguments that you're making here seem to track those quite closely, and we've rejected them there. Williams, the 2022 decision. There's Taylor Williams, Michael Williams, the Third Circuit. Our decision in 2022. Judge Porter. The difference is between a Martinez hearing and what is essentially a Shin hearing or an at-fault hearing. And again, it's because Williams is a procedural default case. We are an E2 case. The border between the two is admittedly porous. They share a common source. So you're abandoning your Martinez claim? No. Martinez is also broader than Shin. Martinez addresses a complete lack of counsel. It also reifies the Coleman agency relationship. And in that relationship, we also believe a hearing would be appropriate to see if we meet whatever standard remains after Shin. But Martinez stops with the first post-conviction counsel, basically. It's not Shin telling us we don't go beyond that. Martinez stops with first post-conviction counsel, correct. And insofar, so we attempted to borrow from the procedural default doctrines in Martinez to argue E2. Shin says, don't do that. Text means what it means in 1996. What did it mean in 1996? Coleman was the law in 1996. Coleman created EDPA. And Coleman raises the agency relationship. So I still think there is an evidentiary question whether even after Shin, what counsel did in this first hearing violated the agency relationship. The counsel you're referring to? Sorry, post-conviction counsel in the first PCR petition when he just simply walked his client up. Now, again, this is a different additional point to the one I was just making about undermining footnote 19. Because if footnote 19 is no good anymore, you revisit the original denial of the evidentiary hearing. We go straight back as though it was 2004. With this separate argument, which would be a remand for a hearing, first the determination of the legal question of what the standard is, whether after Shin is it ineffectiveness plus to some degree, and then whether we meet that standard. Counsel, I'm sorry. Are you abandoning Martinez? Are you saying there's a – because that's how your brief – that's how the briefing in this case had always been. It's all about Martinez and whether or not there was an excuse. Now using Shin language and post-Martinez language, a Shin hearing was an excuse for the failure to develop. I thought that was your – for us, your supplemental brief. I'm hearing something quite different right now. And arguments, as Judge Krause has already observed, are really those that are not consistent with our precedents. Our argument was always a little bit broader than Martinez. Martinez is a little bit broader than Shin. You need to tell me what your argument is, not so much how they morph as a matter of law. Like what is your argument? Are you asking us to evaluate whether you have a Martinez claim to excuse what you say is a procedural default for not raising whatever you think? That's one of my first questions that was elicited through one of my colleagues. Which ineffective assistance did counsel claim to bring in? You're now saying it's a failure by trial counsel to investigate. Okay. You have a view about whether it didn't address the footnote 19 and elsewhere in the teller opinion. I understand that. But what is your argument now? Because I find your argument seems – what you said today seems somewhat different than what the briefing had demonstrated to me since we had this case from 2017. Agreed. The argument that was advanced in the briefing, which we continue to advance, is first, from the beginning, we've said a little bit more than just Martinez justifies relief. Even if we didn't, Martinez is broader than Shin. Our claim was from the start on Martinez. We're saying ineffective assistance of counsel would satisfy E2. Martinez also says that a complete absence of counsel would forgive a procedural default and that if counsel impeded or obstructed – You don't have that here. You don't have an impeded or obstructed. And even we've said in Norris shoddy representation is not a procedural default. Our claim here is that what happened at PCR-A1 was more than shoddy representation. It was more than ineffective assistance of counsel. It was a severing of the agency relationship. And I can give you four things to think about and whether we proffered enough to get an evidentiary hearing on that question. But doesn't Mabel set a standard that is – the threshold is so high that counsel is not acting as an agent in any sense of the word? So, I mean, here counsel was present, makes arguments. We expressed our own concerns about the extent of them. But to say that wasn't acting as an agent in any meaningful sense of the word, can you really say that that threshold was met? I'd consider four aspects of our proffer, the transcript. Think about what post-conviction counsel knew about Mr. Taylor. Think about the context of the situation he found himself in. Think about the words that he used. And think about the substance of what he asked Mr. Taylor to do on the stand. What did he know? Mr. Taylor had a serious history of mental illness. Anything that Mr. Taylor proposed to him, he wasn't probably going to take super seriously, although he was under an ethical obligation to either tell Mr. Taylor that or litigate the claim completely. Second, the context. This is not an unusual context that a client advances a claim that the lawyer does not think is merited. It's frivolous. That puts the lawyer in a difficult position. You have two choices. You can either tell your client this claim is frivolous. I will not advance it. That gives your client an opportunity to get a new lawyer. Alternatively, you can advance the claim to the fullest of your ability as a lawyer. You can investigate it. You can argue it. You cannot do what counsel did in this case, which is simply walk your client up to the stand, stand back, and I don't – this is the context, but I believe this happens, to say, hey, judge, why don't you listen to what my client has to say as a way to distance himself? And that's the third part, the language. He says, you have raised claims of ineffectiveness. Why don't you tell the judge, not me, you? Again, a lawyer's job is usually to advance his client's claims, not to send him up there. And then finally, think about the substance of what he asked Mr. Taylor to prove. He said, prove to the judge that you both lacked a rational and factual understanding of the proceedings against you, that you were incompetent, and in that state, you observed that your lawyer was not abiding by professional standards as dictated in Strickland v. Washington. That claim is impossible to win as a witness, frankly, as a pro se lawyer. You cannot both be incompetent and observe that your trial counsel was ineffective. You're suggesting he was still incompetent in 1997? No, the question that post-conviction counsel put to Mr. Taylor in 1997. In the briefing, we also believe that there should be an evidence you're hearing on the state of Mr. Taylor's case. That was like the first time that ever came up was in the supplemental brief, not shed. So whether that's been preserved is a very different question. But we're talking about there's nothing in the record to support the state of his mental health at the time he was on that witness stand in the post-conviction period, 1996-97, correct? Correct, but the four pieces of context that I just gave you are enough. One additional piece of context in front of the same trial judge who took the plea, yes? Yes, in front of Judge Conister, that's correct. I'm well past my time. I'm happy to answer more questions, but I wanted to remind you. Just a real quick question on timing. Assuming that we disagree with the district court that the motion that was filed here was untimely, it was on the 364th day, what rule would you like us or suggest that we craft to deal with that issue? With the timeliness issue in particular? Look at Buck v. Davis. In Buck v. Davis, the petitioner was in the exact same situation that we were. He had a third post-conviction petition pending in the state court when Trevino came down. His claim was based on Trevino. He waited six months for the decision to come down, and then two months after that, he filed his 60D. We were in the exact same position. We had a third post-conviction petition pending in state court, but we weren't as lucky as Mr. Buck because Mr. Buck got a decision, and we waited, and we waited. At that point, it had been fully briefed for more than a year. We had been in state court for four years. We were just waiting for the state court to give us a decision before we filed the 60D. Unfortunately for us, we didn't get a decision within a year, and so backing up against the one-year deadline, which we felt was the most outside that we could go, we filed at 364 days. I think all you have to say is Buck v. Davis establishes that perhaps at the broadest level, waiting for the state courts to decide claims is a reasonable justification for delaying the filing of a 60D. I think that would be plenty, and I believe Buck v. Davis stands for that proposition. Thank you. Good morning, Your Honors. My name is William Stoikos. I represent the appellees in this matter, and I thank the court for giving the parties an opportunity to answer any questions that Your Honors have. Your Honors, the only question before the court today is whether Judge Brand abused his discretion in finding that the Rule 60p6 motion was filed untimely, that Martinez v. Ryan does not apply to his circumstances because there was no procedural default of any ineffectiveness of counsel claim, and that Mr. Taylor has failed to show an extraordinary circumstance that would permit reopening of this case. As was alluded to during my colleague's presentation... On the question of timing, then, why is within the one-year time, if you file on the next to last day, why is that not a reasonable amount of time? Okay. Thank you for the question, Your Honors. First of all, I would point out that technically the motion to reopen was filed one day, one year and one day after Martinez was cited, and as... Is that accurate? Because there is representation that say the motion was filed on the wrong docket, hence earlier than one year, and as a result, we have a potentially clear error problem with the district court's finding untimeliness because when it said it was one year and one day, that's not supported by the record. It's actually 364 days, or 363. I'm sorry. Is Your Honor saying that the filing it in the wrong docket is just an excusable neglect, basically, that that doesn't count? I'm just suggesting that the statement, it was filed, albeit on the wrong docket, meant when the district court made its calculation, it erred in ignoring that event. Yes. Wouldn't that be clear error and that alone be a reason why we have to at least part from our colleague's conclusion about timeliness? Well, what I would say in response to that, Your Honor, is that very clearly if you read the district court's opinion, although he does reference the time delay as being one year, one day, his discussion continually references one year, waiting one year. I think that that was what he focused on was a one-year delay, which he points out in his opinion is not per se reasonable all by itself based on some decisions of this court. What made it unreasonable here? Okay. Again, we're dealing with the correct number, as I understand it, based on the docket problem was 364 days. So it was filed timely within the particular statute. But the court is saying it was not timely or unreasonable because. Your Honor, Judge Brand considered all the factors set forth in time. You need to fill in what is the because. I'm sorry? He was saying it was unreasonable to file 364 days because and just fill in the rest of the sentence. What did he say made it unreasonable? For one thing, he indicated that there's several things. One is that counsel for Mr. Taylor waited a year and provided no reasonable explanation for why they waited a full year and, in fact, provided an explanation which was disingenuous. I don't know if you want me to elaborate on that, but the explanation was that they were waiting for a disposition in state court by the Supreme Court of Pennsylvania of something, and, in fact, that was false. And, in fact, they ended up filing the motion two months before the state Supreme Court disposed of the merry matter. They claimed they had to be resolved before they could file their motion. I think that Mr. Taylor's counsel was referring to that justified not filing immediately upon the decision of Martinez, but rather to see whether or not the state Supreme Court would act. And if it didn't, as time went on, there seemed to have been, based on the record, some act that filed it at the time they did. I don't know if we can call that disingenuous. I'm sorry? I don't think we can call that disingenuous. Well, to the extent that the arguments made in the district court were that he waited because he was waiting for the Supreme Court to dispose of the pending proceeding, that was false. The proceeding in state court had nothing to do with the subject to this Rule 60 motion, and, in fact— But if he had prevailed in the state court, then there wouldn't have had to have been a disposition on the Supreme Court. I'll grant you that, Your Honor. Yes. I mean, Your Honors obviously have the discretion to feel that that is a reasonable explanation for why they waited. I would point out that one of the factors that this court indicated in Cox is important is that considerations of repose and finality become stronger as the longer decision has been settled. And we're dealing with a state court judgment from 1993 and a federal Hades court final judgment of this court in 2007. So the problem, just on the superficial level, if I want to file a negligence claim and I have two years and I wait until the last day before the expiration of the statute of limitations, that's okay. And that's a simple negligence action. And here you're dealing with where the stakes and the complexity of capital habeas are about as important as it gets. So in that context, why is filing timely within the statute period unreasonable? Well, Your Honor, I believe that this court has said that the timeliness calculation or analysis is a highly individualized determination based on the specific facts and circumstances presented. And in this case, we've got counsel for Mr. Taylor is highly experienced. They're experts in federal habeas corpus and capital litigation. And they waited a year. They provide no explanation for why they waited a year. And I would agree, Your Honor, this is a capital case. So that's very important. But this court and the Supreme Court have never said that because if a case is capital, therefore we're never going to get finality, we're never going to get repose. Quite to the contrary. And I would point out that AEDPA stands for the Anti-Terrorism Effective Death Act. It was specifically designed and enacted by Congress to streamline death penalty cases in federal courts, to expedite their dispositions. And so, you know, we would respectfully argue that although the fact that it's a capital case is relevant in consideration, it doesn't per se make it timely. And again, the question of timeliness is was the amount of time they waited reasonable under the circumstances. It's not a one-year statute of limitations for this argument. Is it a relevant consideration that there's the strategic reason that counsels identified? That is, with the pending state court proceeding, if that had been resolved, that may have mooted the need to proceed before the federal court. So they waited as long as they could before that 365-day deadline. Is that a reasonable, is that a relevant consideration? I think we're looking at the equitable factors that inform what's unreasonable and timeliness. Yes, sure. I think that's a reasonable consideration for the court to take into account. However, I think it's also well established in the Federal Hagee's Corpus Jurisprudens that if a petitioner has a habeas claim, he or she can bring it and then ask the federal court to stay the proceedings while they go back to state court. So nothing prevented Mr. Taylor's counsel from following that well-established procedure in Federal Hagee's Corpus law. In addition, you mentioned equitable tolling, and if your honors would look at the equitable tolling line of cases of our Supreme Court, beginning with Holland v. Florida in 2010, the court's made very clear that when looking at equitable tolling under AEDPA, the court should consider two things, whether the petitioner diligently pursued his rights, and second, whether some extraordinary circumstance stood in his way to filing earlier. So I'd submit that that is also a relevant consideration for the court to bring to bear in rendering his decision on timeliness. I think that regardless of timeliness, I'd like to bring the court's attention back to the merits of the Rule 60B motion. Before you do that, because it's going to get to your getting to the merits of the 60B, counsel this morning described as ineffective assistance to counsel claim trial counsel. As trial counsel, if I understood him correctly, trial counsel's failure to investigate Mr. Taylor's competency. That's what I think he said. Has that claim been decided on the merits? If so, by what court? The question of trial counsel's effectiveness or ineffectiveness in connection with the competency claims was decided by the state trial court, the state PCRA court, the state Supreme Court, the federal district court, and this court. In 2007, in this court's opinion in 2007, it definitively, it exhaustively considered the claim of competency. Sorry, go ahead. No, I just want to know, like, but he's trying to draw a line between maybe there was a determination on competency, but I'm saying there was a failure to investigate claim that was unresolved. Is that accurate? Was a failure to investigate his competency claim lodged before and was it unresolved? Because I'm with you on, yes, our colleagues on another panel decided that the competency issue was resolved not in Mr. Taylor's favor. Right. Your adversary, when we asked him to articulate his ineffective assistance to trial counsel claim this minute, he said, I'm making a claim of failure to investigate Mr. Taylor's competency. Was that issue decided as part of this litany of court decisions that clearly addressed the issue of competency of Mr. Taylor and concluded that based on the record in front of those courts, he was, in fact, competent throughout the proceedings? I would submit, Your Honor, that that ineffective claim was addressed in the state courts and in the initial habeas proceedings. I would point out that. So it was raised? You're saying it was raised and addressed? I mean, to the best of my recollection, it was raised. We're going back a lot of years, a lot of cases, a lot of pleadings, and to the best of my recollection, it was raised. If for any reason it wasn't, Your Honor, I would just point out that there could be, trial counsel, there could be no prejudice. There could be no way for Mr. Taylor to prove the prejudice prong of Strickland on the failure to investigate, given that it's already been definitively decided by the state courts and by this court that Mr. Taylor was competent and that trial counsel's performance in connection with the competency-related issues was he was effective, not ineffective. So going to Judge Krauts' questions, your colleague across the aisle, Williams would tell us, Williams, the 2022 Williams, would tell us if we were considering allowing a reopening of additional facts, Williams says, if I understand it correctly, look at the claim, look at the state court record as it exists, and can this petitioner prevail? And the answer from your point of view would be no. Absolutely, Your Honor. Absolutely. I would like to address a misdirection by Mr. Taylor's counsel and perhaps a misunderstanding here at this time with regard to what this court considered when it made its determinations in 2007. Yes, it had all of the materials that he asked to be allowed in the record. It had all of it in front of it and did consider it for certain of the claims. I think it might have been the due process claim. Yes, Your Honor. This court exhaustively considered and painstakingly analyzed the content of the mental health, the four mental health expert affidavits that were part of the third PCRA pleadings. This court, if you'll permit me, I'd just like to back up and set the stage, as Your Honors may realize and recall, that in its 2000 opinion, it distinguished between the claims raised in the first PCRA proceedings and in the second PCRA proceedings. And it noted that the first PCRA proceedings, this court, the panel of this court that decided, made its opinion in 2007, said that the first PCRA proceedings addressed competency-based ineffectiveness claims, but that the second PCRA proceedings also addressed something that wasn't addressed before, which was whether the trial counsel was ineffective in permitting an involuntary and unknowing plea. And this court noted that with the first PCRA proceedings, okay, that Mr. Taylor failed, sorry, well, on the issue of competency, Mr. Taylor failed to develop a state court record to include the supplemental materials that he now wants this court to consider. And so that expansion of the record on that was barred by 2254E2, which this has been affirmed by the Supreme Court in Shinn and in Shoup v. Twyford. Now, it also noted that the claims relating to counsel's performance with regard to the knowing involuntary plea, that although those were defaulted, they were rejected on jurisdictional grounds by the state courts in the second PCRA proceedings. This court found that that was an irregular, or forgive me for not remembering the exact language, but it was not an adequate state ground, and therefore it said Mr. Taylor had not failed to develop the facts in the state court record on the issue of knowing involuntary and intelligent plea. And so this court then launched into a four-page analysis of the affidavits of the mental health experts, which are the substantial equivalent of what they're claiming wasn't considered by this court or any court. And it's one I would note in the 2007 pages, 444 to 448, where it walks through each one, and it articulates in great detail why none of the affidavits and the opinions of those experts in the report, or the contents of the affidavits, why those do not change the equation and why they do not invalidate the constitutional validity of the guilty pleas as being knowing, intelligent, and voluntary. But that's not a conclusion on competency, is it? No, that's a great question. If I may, I'd like to recite a brief passage from this court's opinion in 2007, which addresses that very point. This is from page 431 of the opinion. Quote, the focus of a competency inquiry is the defendant's capacity. The question is whether he has the ability to understand the proceedings. The purpose of the knowing involuntary inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequence of a particular decision and whether the decision is uncoerced. If a defendant does not have the ability to understand the proceedings, it is impossible that he actually does understand them. This is the most important sentence. It follows, then, that a finding of competence is a prerequisite to a determination that a plea is knowing and voluntary. This court, in essence, found that even considering the affidavits of the mental health experts, in the context of knowing involuntary plea, that that did not establish that he was mentally incompetent, which is what they're arguing. They're arguing, we want you to look at this additional evidence that was never brought in before, and what we're saying, Your Honor, is the court clearly looked at it and made a decision on knowing involuntary, the issue surrounding knowing involuntary plea, which necessarily implicates a finding of competence. They seem to be arguing something slightly different now, and I'm not sure that it was teased out quite this way previously, but distinguishing between an argument about ineffective assistance as to presenting competence, as to raising the issue of competence, versus investigating it. I'm not sure that that is the case. That is, bringing forward, having talked to, and therefore being able to bring forward witnesses who could talk about competence from childhood, from other social settings, as well as the physician's reports, and perhaps others beyond those that we have here. Are those different claims? And going back to Judge Schwartz's question, where can you point us that a court has separately addressed the question of investigation of competency, as opposed to just raising the issue and presenting competence as a claim? Well, if I may, in the most respectful manner possible, I'm going to answer your question. I just want to point out that, again, the issue with the court is whether Judge Grant abused his discretion, and in making his determination. And the determination was, I mean, the entire argument was on Martinez v. Ryan. That was what counsel based its argument on solely, was Martinez v. Ryan's change to the application of Rule 2254E2. And clearly that was an incorrect argument, according to our Supreme Court. So to the extent we're now looking at other ineffective counsel claims, I mean, I don't know how they fit into the Rule 60B6 appeal, because the issue is whether or not Judge Grant abused his discretion in his specific determinations. And we would submit he didn't make it clearly around his finding of law or finding of fact and did not unreasonably apply the law to fact. But back to your question, I would just submit that in the myriad, in all the state court litigation, that issue was addressed. Which issue are you talking about? I'm sorry? Which issue? The issue of failure. Very specifically failure to investigate. Standing here right now, I cannot point to the specific place where it was addressed. I believe it was addressed. And, again, I would come back to say the court, this court, all the courts that have considered this issue of competency have found that he was competent. I mean, there's a reason that every attorney that worked with him up until the current counsel didn't press the competency issue. And it's obvious why, because there was no indicia of incompetence. And as this court pointed out in its 2007 opinion, there's an abundant and compelling set of evidence from the trial record and the PCRA record establishing that he was competent. So, from your point of view, hypothetically, if we were to assume this claim was never raised, because when you're looking at procedural default, you're looking at actions by counsel, never raised failure to investigate. And, hypothetically, we were to conclude that a competent TCR counsel would have raised it. Your point is when we get to the next step, should this claim have been made, it would still lose on the prejudice prong of Strickland, C, for support, our own court's analysis of these very evidence, and its conclusion that there is no evidence of a lack of competency. Do you follow all that? Yes. And I agree with that statement. That would be our position. However, I would also add that one of the claims that was considered in the first PCRA proceedings was whether trial counsel was incompetent for not requesting a competency hearing. So I would suggest that that goes part and parcel with the question of whether he should have investigated. And all the courts, from the state courts up to this court, have addressed why it was objectively reasonable for trial counsel to perform the way he did in connection with his client's competency. So I really think that what was decided and analyzed and decided in the state courts did encompass and subsume the question of effectiveness or lack thereof in terms of investigating competence. I mean, there's just a voluminous analysis provided by this court and the lower courts on the competence of Mr. Taylor at all. Really, you can't separate those two claims. Correct. I don't think you can separate that out. I mean, the issue of his failure to request a competency hearing was addressed. I mean, this court pointed out that there were two mental health experts, one of them nationally renowned and relied upon by Mr. Taylor's counsel all the time in capital cases who, notwithstanding all the information that is now being foisted upon the court as additional evidence for why we should just reopen this judgment and start all over again, notwithstanding that, notwithstanding the experts, Dr. Sadoff, Dr. Breitschek, knowing about voices and distress and remorse, and they still found both of them independently that Mr. Taylor was competent to proceed in his trial proceedings, that there was no available insanity defense, that he had the capacity to formulate the intent to murder, and that he could participate with his counsel in formulating a defense. So, yes, I would say that as I recall, didn't some of these experts change their view later on in 1999? The original two experts that were relied upon by the trial court, and the PCRA court, they filed, quote, unquote, in the words of this court, updated opinion. And this court said two things about that. First, it said, Mr. Taylor's argument that, you see, one of the things that the experts said in their updated opinions was, we wish you had seen the other experts' opinion. I never got to see his opinion. And this court rejected that and said, notwithstanding, that may well be the case, but it found that trial counsel was objectively reasonable in wanting to have two independent mental health evaluations of his client, which he got, which were given to the court. The other thing that's striking is that if you go back, again, to pages 444 to 448, this court addresses at length and in detail the updates, and says it doesn't change anything. It doesn't change anything about the ultimate question of competency and counsel's performance in connection with competency. I said Dudley and Blair. Probably the ones who, was the ones who changed their minds, Sadov and Brarczyk? I apologize, your, my hearing's a little bad. The ones who changed their views by 1999, Sadov and Brarczyk. Just a factual question. I was saying to you initially, I thought it was Dudley and Blair, but I think I may have misstated that. I mean, they said that they did change, they did update their views to reflect that the existence of additional mental health indicia, but this court reviewed all of that and said it doesn't change the equation on competency or knowing involuntary entry of pleas, or waiver of the right, trial rights, or waiver of the right to present mitigating evidence. And this has been thoroughly addressed and exhausted by this court in 2007. And I really feel, with all due respect to those in counsel, that this is, they're trying to, it's like we're playing a game of whack-a-mole here. I mean, the only claim was Martinez v. Ryan that brings us here. And that was definitively rejected by our Supreme Court. So now, what did they do? They come up and they presented this court in their most recent filings with two new claims not raised in the court below, which means they're not eligible for appellate review right now. And also, their attacks. Tell us what you think those two new claims are. I'm sorry? What two new claims do you claim were just raised? Well, the two new claims that I believe were articulated in the most recent brief or filing by Mr. Taylor's counsel are, number one, that Mr. Taylor should be excused from failing to develop the state court record on competency issues because he was abandoned by his PCRA counsel. And he also makes an argument that he lacked the mental capacity to assist PCR counsel. That he what? He lacked the mental capacity to assert PCR counsel. That was another argument that I think was raised for the first time. Forgive me. I'm so sorry. My fault. No, it's my fault. That he lacked the mental capacity to assist PCR counsel, and therefore he's not at fault for purposes of 2254-E. I mean, I don't recall that being the thrust of his claim, but I would accept that if that's what it says, Your Honor. The brief has that in. Do you remember that claim ever being raised before? No. I don't recall that claim ever being raised. And I would submit that's a new claim that should have been raised in the initial habeas proceedings. So you identified one of the two new claims is claim of abandonment by counsel. Yes. And it's trial counsel. Is that who you're referring to? A claim of abandonment by trial counsel or PCR counsel? He says PCRA counsel. He's claiming suddenly in the 11th hour, well, I mean, we argued in the motion to open that Judge Brand had ruled upon and that we appealed to this court. Well, we argued that Martinez-Reinitz used the procedural default. Well, we're not arguing that anymore. We're simply saying that the PCR counsel abandoned him, so we get another shot. And my argument, Your Honor, is there's nothing new that justifies that claim. That claim could have been raised in the initial habeas proceedings, that his PCR counsel abandoned him. The law isn't new. The real claim is that trial counsel didn't investigate. PCRA counsel didn't really focus as he should have on the investigation part. Right? Isn't that the claim that's being made or had been made? I mean, that's not really the full breadth of the claim that I understand to be made, but I understand that that's apparently something that is being pushed as a failure to investigate. But, again, it's been addressed on the merits. What's the second new claim that you assert counsel is raising for the first time on the supplemental brief? If I may just say, concluding my last point respectfully, is there's no new law here that justifies bringing this claim now under Rule 90B6. There's nothing new. The law is the same. Shin and Shook don't open the door to new claims, new procedural default-based claims. They shut the door to that. But it seems that they're trying to argue that somehow Shin gives them a right to now raise in a motion to open a claim of abandonment. That could have been raised before. Now, the second claim is that we've already somewhat addressed, which is they're claiming now, well, even if we can't expand the state court record, Your Honors, under Martinez based on Shin and Shook, this court should just reopen the whole proceeding and allow us to consider that supplemental material that we failed to present, that Mr. Keller failed to present in the state courts. Because, let me back up, because what he's asking is for this court to consider the mental health information that was entered onto the record in the third PCRA proceeding, which followed the final judgment on habeas. Okay? And my point on that, I've already argued, is yes, the four mental health experts, the two that had updated opinions and the two they found who were willing for compensation to argue that to present opinions that contradicted the initial opinions, those were put into evidence in the third PCRA proceedings. However, the substance, the exact substance of that evidence was already considered by this court in 2007 when he considered the affidavits of those experts. As I've already discussed, the affidavits in connection with the question of whether the plea was knowing, intelligent, and voluntary, and whether counsel's performance, trial counsel's performance was effective in that regard. Our 2007 opinion already said that those reports were not part of the state court record. That's a holding from the observation from our court. Yes, if I may try to explain.  So this court said that the affidavits are not part of the state court record for purposes of the competency-based claims of trial counsel effectiveness. But it also found that they are part of the state court record for purposes, no, let me back up. They're not part of the state court record, but that this court considered them in its capacity as a federal court conducting habeas review in connection with the argument that counsel was ineffective with regard to the knowing and voluntary nature of the pleas. So in the same opinion, it distinguished between, well, we can't consider the affidavits for competency, but we can consider them for knowing and voluntary and intelligent plea claims. And this court found they didn't change the equation, that the pleas and the waivers made were all constitutionally valid. The counsel performed objectively reasonably in that regard. And again, the reason I recited that passage for you from page 431 is this court says essentially a finding that the pleas were knowing, intelligent, and voluntary necessarily includes a finding that the petitioner was competent when he did so. And this court said that very clearly. Do we have any other questions? Yeah, I've got a couple for you. Just to be clear, I think we understand and appreciate on both sides the need for zealous advocacy. So putting aside any impugning of the good faith behind the argument, I've been hearing the argument that your colleague is not precluded from continuing to argue for a hearing on remand by SHIN, and that there are now post-SHIN, there are some arguments to be made that perhaps are different about the scope of the record. So let me ask you about that one, because when we're thinking about, and just if helpful, remove it from this case entirely. When we're thinking about, for purposes post-SHIN, what is the scope of the state court record? Should that include anything beyond a first PCR hearing, and why not? If not. No, after SHIN, the court has to apply Rule 2254E2. I think Judge Cross is asking a different question. I'm sorry. I'm not trying to ignore the question. I may have misunderstood it. I think the question that's being asked, and Judge Cross correct me if I'm wrong, is what is the state court record? Is it frozen in time at the time of the first PCRA hearing? Is it frozen in time? I think that's the question. As opposed to what? When we talk about the state court record that can be considered by a federal habeas court, and we have several different PCRA proceedings, such as in this case where it's at the third one that there is some new information and evidence that's put into the record before the state court. Does the state court record encompass all of those proceedings, or is it somehow limited to only the trial court record or PCRA record from the first post-conviction proceeding? Well, my initial reaction to that question, Your Honor, is that to the extent Mr. Taylor wanted to ask this court or the federal courts to consider the additional information that was submitted in the third PCRA petition, which, again, was in the affidavits considered in the federal habeas proceedings, but to the extent he wanted to say, look, we've got new evidence, it needed to file something in this court asking for that. It never did that. It didn't file a request for a new habeas claim. It didn't file a Rule 60B motion. It didn't even include that claim in the Rule 60B motion that brought us here today. So to the extent that he wants to bring in that additional evidence, he needs to find a proper procedural vehicle, allowed by the law, to reopen his judgment. Well, we can always expand the certification of questions, right? Obviously, Your Honor, has the power to address whatever issues it wants to. So just as to the answer to that question, what should we be thinking about as to what constitutes the state court record? I think, I mean, the state court record would include whatever was introduced into the state court as evidence. Does it matter that at the third PCR proceeding, a different issue was before the court? The conflict of interest question was before the court, and at best, that was a time where this evidence was presented. I don't know if it was relevant to the conflict of interest question, other than to say he wouldn't have known it sooner. Yeah, I mean, it really wasn't relevant to the conflict of interest question, but the judge permitted it anyway. I happen to be, I was there, so I happen to recall that. But the, I'm sorry, could you repeat the question? We were just trying to figure out what constitutes the state court record. And what you've just said is, at least at the third PCR proceeding, a judge permitted that into evidence, unlike the PCR two proceeding where it was not permitted because it was untimely. Right. So do those additional reports constitute the state court record? Are they already in the state court record? Well, I think in connection with your question, and H.D., we remember that those proceedings were concluded with a finding by the highest state, state's highest court, that the court lacked jurisdiction to consider that, the third PCR petition claims. That doesn't negate the fact that the record was traded. And I don't have a definitive answer to you on that question, although I would be happy to submit a post argument submission on that, on that very question, on the very question about whether the third PCR proceeding evidence should come in after the habeas decision has been final. But again, I would bring the court back to the fact that I would ask you to consider respectfully that your honor considered the substance of that evidence in the affidavits in his 2007 decision. It doesn't need to go back and relook at the very same evidence again. Let me ask you as well, the question about false on the part of a petitioner. We've taken the position that the negligence of counsel can be intuited to the client. Yes. Would that still be the case if a client were in fact incompetent? I believe so. Yes, your honor. The counsel's effectiveness is a separate question to whether or not he was competent. His client was competent. So for purposes of E2 being at fault, does that become rather circular in terms of the ability to show that a client was, was not competent at the time if they, in fact, if negligence of their counsel was being imputed to them, even if there is evidence suggesting that they may not have been competent to object or in any way, is this counsel? I honestly don't see how the competency of the client changes the agency relationship between his counsel and him in terms of the negligence of counsel. I mean, counsel's performance would be separate and apart from the competency of his client, unless the issue is on the issue of competence. And I understand that's where we're going around and around. And again, I would just point out that the record, the state court record and this court's findings all found that Mr. Taylor, there's no basis to find Mr. Taylor was incompetent. So it's a hypothetical question, which is interesting to ask, but it doesn't, it ignores years of analysis of this done by the state courts, you know, the trial court, the PCRA court, the state Supreme court, the district court, and this court on competency always become the same conclusion. And the only thing that they can argue, they argue first, they argued Martinez and that's been rejected. So now they're arguing, well, let's go to that PCRA hearing where we've introduced these expert opinions. Or the first PCRA hearing where they did not introduce the Dr. Blair and Dr. Dudley's evaluations. I'm sorry,  the first PCRA hearing, they failed to produce Dr. Blair's and Dr. Dudley's evaluations. And there was a claim that that was ineffective assistance council. Yes, correct. And that was considered by this court on federal Haiti's corpus review. And this court found that we talked about during the trial council was not ineffective in that regard. Yeah. Now there's a separate question about whether or not Mr. Taylor's simply, what he's really doing is he's camouflaging a PCRA council. And in fact, in this claim, of course, that's not a basis for federal, federal, federal Haiti's relief. Thank you very much. Thank you very much. Yours. Okay. Your honor, just cross. I'd like to start quickly with your question about the definition of the state court proceedings. I just observed that the statute says. Failed to develop in state court proceedings. It doesn't include the article. It doesn't say the state court proceedings. It just says state court proceedings in general. So in a strictly textualist interpretation, I do think a broad approach is appropriate. If you're not going to go with the broad approach. At the very least. Because of the history of the doctrines, can you be to me at risk? They have to happen at the same time. When the legal presentation, when the legal presentation of the claim occurs, that is the opportunity to present the facts in support of that legal. So it was caught in a little bit of a. You know, between a rock and a hard place there, because if it's any proceeding, Then we got them into the third. PCRA proceedings. And if it's. You know, the proceeding at which the facts or the legal claim was presented. And it's. What should have happened is you should have asked. Did we ask for a hearing at the second PCRA petition? When we presented the legal basis for the claim and we did, and it was denied. So again, textualist approach, I think a broad approach or text was the text of the statute. I think a broad approach works. At the least. You've got to tie them to the same time. Your opportunity to develop. Having a difficult time following this, what you're saying, counsel, you directed our attention to the language in 2254. And then you kind of. I kind of pivoted to something slightly different. Just cross. This question was, what's the record? What's the state court record? That's the question that we're trying to get an answer to. And are you saying that the relevant state court record is the record that was developed at the time? That this legal issue of consequence. Occurred. Yes. I understand you correctly. Yes. Okay. And therefore, that's why the presentation from your point of view at the PCR 3 proceeding is of no consequence here. Cause that was about conflict of interest. Sorry. To two arguments. The first is. When you interpret the phrase state court proceedings, does the state court record. Did anyone, did you fail to develop the record in the state court proceedings? Our initial textualist argument is. Any state court proceeding would apply. If the court is not persuaded by that. If it thinks it's something narrower than that. Then the failure to develop has to be assessed. At the moment that the legal basis of the claims introduced. That's the limiting principle. That's community. So if it's the first definition, you're saying. Develop in the state court. At some point. This is in the record state court record. Correct. If we adopt a different view that is presented at the time of the legal claim. It is not in the record. Correct. And therefore you only can win. If we read it. In the second way. Correct. That the failure to develop occurred. Or that the diligent effort to attempt to develop occurred at the second PCRI hearing, which was the same moment at which the failure to investigate claims introduced. The state court denied that hearing for an inadequate state law rule. We're straight under Wilson. We were diligent in attempting to develop the record. We should get an evidentiary hearing. That's the way to resolve that. Just cross. You asked a question that tried to, or that was pushing at the difference. Just how finally you can define a claim. I just come back to that. Yeah. The second PCRA hearing was when 2004. 1999. Or 99. And. That was referred to in the 2007 opinion of our court. Right. In 2007, the court found that all claims presented in 1999 were procedurally defaulted as untimely, but that the state court's timeliness rule was inadequate. So it was not under D1 analysis. It could reach the merits. And judge Amber, you had a question earlier. The two experts who were new were Dudley and Blair. At some point, the discussion was about whether or not those experts were considered on the. The waiver argument. Look at how the court resolved. Judge Blair's declaration in that portion of the opinion. It says. Judge Blair only talks about competency. So we can't consider her opinion for waiver. Which. Is precisely her point. Judge Blair's document. Her affidavit is one of those we need. Also look at the way that the court structured the opinion, because I think it made sense. But it reveals some of the cascading problems. It decided the competency issues first, even though we hadn't presented them. Decided competency first. Then it decided waiver. And then it looked at Mr. Taylor's Wiggins claim, which is very strong. Having found that he was competent. You keep saying judge doctors. I'm sorry. Dr. Blair.  Yes. Dr. Blair.  Dudley. Thank you. Dr. Stay off. Mr. Brian. The. They ordered it in that way. And having found that he was competent. They relied on his instruction to counsel, not to make to call witnesses. And they said, the court said, the only reason we can, we can do that. Is because we determined he was competent. And because he was competent, counsel was bound by his wishes, not to contact witnesses. If he was not competent, we have an entire Wiggins claim. Because counsel was not allowed to rely on his instruction. All of that argument is attacking our prior opinion, which we are bound to follow up. We are 60 B, and this gets to another question that you asked. Our 60 B is limited to the issue of whether or not an evidentiary hearing should have been granted. That determination, we are attacking with our 60 B. It's a defect in the proceeding. It's not a merits-based claim, but that determination, the denial of the evidentiary hearing is upstream of all of those decisions. The hearing that you're asking for a remand for now is, is about fault. Correct. And that gets to judge Schwartz, Schwartz's question. Judge Schwartz had a question about Williams from 2022. The litigant in Williams wanted a Martinez hearing. We thought you wanted, at least I'll speak for myself, I understood the request since I've had this case in 2017 is Martinez,   Shin comes along, I understood your briefing to say, we should get a Martinez excuse hearing. I think that was a logical thing to understand when one of the new arguments that was presented in the supplemental brief we got in March was, counsel abandoned my guy, my guy didn't have the competency, therefore he's not at fault. E2 is triggered. It doesn't apply because he's not at fault. So that's why I thought you were asking for a Martinez hearing. Go back and look at the 60B briefing. We've been consistent. Our argument was won by analogy. We said Martinez, which applies in the procedural default space, should apply in the E2 space, but we've always asked for an E2 hearing. The request has always been, was Mr. Taylor at fault for failing to develop the record in 1997? We attempted to argue by analogy for Martinez. The Supreme Court said that's wrong, but at the same moment it said it was wrong, it undermined the basis for this court's denial of the evidentiary hearing in the first place. With regard to two final points, there were some questions about the fact that Mr. Taylor was resistant, specifically with the issue of competency. Look at Hull v. Freeman from 1991 before the trial in this case. This court, as of that time, said it is axiomatic that the demands of one whose mental capacities are in doubt to be found competent does not relieve counsel of their independent professional duty to investigate whether the client is competent. You can't simply take the words of someone who says they're competent and trust them. That's Hull. I would also look at Gray and Egan v. Singletary. With respect to the question of whether or not Mr. Taylor had experts, he did, but the failure to investigate is, again, upstream of that. The counsel had to give the experts the information they needed. I would look at Bouchillon in particular and Appel, a case from this court in 2007 in which two counsels who did not even believe themselves to be the petitioner's lawyers did more investigation than counsel in this case. Unless there are more questions, or does the court have any more questions? I'd be happy to answer. Just going back to the language of footnote 19, in footnote 19 we identified the argument being raised as trial counsel's investigation being inadequate. If that argument was in fact the argument raised, we've already rejected it. Are you asking us now to conclude we mischaracterized the argument in Taylor v. Horn? No, Your Honor. As an observation, I don't actually think there's a decision on the claim in that footnote. It just states what the argument is, and then it says on this basis he contends the district court should have held an evidentiary hearing. Which is your argument? What he says is that Taylor already had an evidentiary hearing on this issue before the first BCRA court where he failed to produce Dr. Blair's and Dr. Dudley's evaluations and then cites this Sixth Circuit case which basically says that it should have been developed in relation to the ineffective assistance claims during the first post-conviction hearing. Correct. Agreed on all fours there. They state the argument, then they address the question of the evidentiary hearing, which is the thing that we're attacking with our 60B, the denial of the evidentiary hearing, and they say the problem, again, I encourage you to go look up, again is referencing a section above it, but is that Taylor already had an evidentiary hearing on this issue, which is just not true if the question is trial counsel's investigation was inadequate. The only evidentiary hearing Mr. Taylor ever got was in 1997 on the question of whether trial counsel was competent for making trial decisions, not investigation-related. If this issue instead means competency, which is actually what I believe, again, because they say, again, they're referencing the competency determination. The competency determination has no effect on ineffective assistance for failure to investigate. The whole point of an investigation claim is that the state court record as it existed. But if the competency determination by our prior panel included consideration of the very evidence you claim he failed to get, this Third Circuit has resolved your claim, addressed the claim, considered the evidence already, and there's no error not to reopen the proceedings. It did not consider the evidence. It didn't consider the evidence? I saw many columns identifying these four experts and my colleague's perspective about the meaningfulness of those on the competency issue. Read the final sentence of its resolution of Dr. Blair's declaration. It says, Dr. Blair's declaration is about competency, not waiver. Therefore, we can't consider it with regard to the question of waiver. The question of whether they can consider Dr. Blair's declaration for competency purposes slides by. Ms. Cross, anything for you? No, thank you. Thank you, counsel. The court thanks counsel for their submissions. We've gotten a lot of them over the years we've been together. We will request one more thing, which is we'd ask that you arrange to have a transcript of this oral argument and if the sides could split the expense of that. We thank counsel for their helpful argument and all the hard work that's gone in over the years in this matter.